**FILED**

September 13, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| TEXAS PUBLIC POLICY FOUNDATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:22-CV-01208-DAE |
| | § | |
| THE UNITED STATES DEPARTMENT | § | |
| OF STATE, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S COMBINED RESPONSE TO MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT**

In this Freedom of Information Act ("FOIA") case, Defendant the United States Department of State (the "Department") files this Response to Plaintiff Texas Public Policy Foundation's ("TPPF") Motion for Summary Judgment (Dkt. 17) and combined Cross-Motion for Summary Judgment. Under FOIA, federal agencies receiving a FOIA request must conduct a reasonable search for responsive records and make responsive records available to the public, subject to nine exemptions. 5 U.S.C. § 552(b). Here, TPPF challenges both the adequacy of the Department's search and the propriety of its claimed exemptions. For the reasons stated below and in the attached declaration and index, TPPF's Motion should be denied. Instead, the Court should grant summary judgment in favor of the Department.

**BACKGROUND**

On February 7, 2022, TPPF submitted a FOIA request to the Department seeking records related to the agency's analysis and input in creating a national greenhouse gas emissions target. Ex. A, Weetman Decl. ¶5. In 10 subparts, TPPF's FOIA request sought, among other things, recommendations, determinations, analyses, discussions, documents, communications, and results

prepared by any Department employee or any contractor acting on behalf of the Department in relation to the 2030 Nationally Determined Contribution emissions target. *See* Dkt. 1 ¶20; *see also* Ex. A2.

By letter dated February 24, 2022, the Department acknowledged receipt of TPPF's FOIA request and assigned it Case Control Number F-2022-05067. Ex. A, Weetman Decl. ¶6. It subsequently searched all locations reasonably likely to contain documents responsive to TPPF's FOIA request. *Id.* ¶35. The Department made four productions of responsive documents to TPPF by letters dated: February 10, 2023, February 22, 2023, March 31, 2023, and April 28, 2023. *Id.* at Ex. A4-A7. The Department released one document in full and eight documents in part. *Id.* ¶35. The Department carefully reviewed all responsive documents for reasonable segregation of non-exempt information and implemented segregation when possible. *Id.;* Ex. A1, Vaughn Index.

## LEGAL STANDARD

In general, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "In the FOIA context, however, the traditional standard is modified because 'the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010).

### I.    Adequacy of the Search

When the Government moves for summary judgment, a threshold matter is whether the agency fielding the request conducted a reasonable search for responsive records. "An agency's search for documents in response to a FOIA request is adequate if it is 'beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" *Jackson v. U.S. Dep't of Just.*, 270 F. Supp. 3d 90, 94 (D.D.C. 2017) (quoting *Ancient Coin Collectors Guild v. U.S.*

*Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)) (cleaned up).  When courts "consider the adequacy of a search in response to a FOIA request, the burden is on the agency to demonstrate that it made a 'good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested.'"  *DiBacco v. Dep't of the Army*, 926 F.3d 827, 832 (D.C. Cir. 2019) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Batton*, 598 F.3d at 176 (quoting same).  "The adequacy of an agency's search for documents under FOIA 'is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.'"  *Negley v. U.S. Dep't of Just.*, 305 F. Supp. 3d 36, 43–44 (D.D.C. 2018) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

## II.    Application of FOIA Exemptions

Once an adequate search is established, FOIA requires federal agencies to disclose documents within their control upon request unless the documents fall within one of the nine enumerated exemptions.  *See* 5 U.S.C. § 552(b)(1)–(9).  The government bears the burden to prove that documents fall within an exemption. *U.S. Dep't of Just. V. Tax Analysts*, 492 U.S. 136, 141 n.3 (1989); *Batton*, 598 F.3d at 175; *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").

"Typically it does so by [1] affidavit," *Am. Civ. Liberties Union v. U.S. Dep't of Defense,* 628 F.3d 612, 619 (D.C. Cir. 2011), and by [2] submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009).  A *Vaughn* index is a table, common in FOIA cases, describing the withheld documents and explaining why the withheld information fell under the claimed exemptions.  *Batton*, 598 F.3d at 174.  An agency's affidavits "are generally

accorded the 'presumption of legitimacy' unless there is evidence that the agency handled the

FOIA request in bad faith." *Id.* at 179.

Although the statute is designed to promote disclosure, "FOIA expressly recognizes that

important interests are served by its exemptions, and those exemptions are as much a part of

FOIA's purposes and policies as the statute's disclosure requirement." *Jobe v. Nat'l Transp. Safety*

*Bd.*, 1 F.4th 396, 402 (5th Cir. 2021) (citing *Food Marketing Inst. V. Argus Leader Media*, 139 S.

Ct. 2356, 2366 (2019) (cleaned up)); *see also FBI v. Abramson*, 456 U.S. 615, 630–31 (1982)

("While Congress established that the basic policy of [FOIA] is in favor of disclosure, it recognized

the important interests served by the exemptions."). "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" *Wolf v. C.I.A.*, 473

F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

## ARGUMENT

### I.    The Department Conducted an Adequate Search.[1]

"To demonstrate that it has performed an adequate search, an agency must submit a

reasonably detailed affidavit describing the search." *Jackson*, 270 F. Supp. 3d at 95 (citing

*Oglesby*, 920 F.2d at 68). "That showing can be made through declarations that detail 'what

records were searched, by whom, and through what process.'" *Am. Oversight v. U.S. Dep't of*

*Just.*, 401 F. Supp. 3d 16, 23 (D.D.C. 2019) (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d

548, 552 (D.C. Cir. 1994)). As long as the agency "explain[s] 'in reasonable detail the scope and

method of the search conducted,'" the declaration "'will suffice to demonstrate compliance' with

---

[1] In its Motion for Summary Judgment, TPPF frames the adequacy of the Department's search as the secondary issue for the Court to address. *See* Dkt. 17 at Section II. However, in FOIA cases, the adequacy of the search is a threshold matter. Accordingly, in its Response and Cross-Motion, the Department will address the adequacy of its search first.

FOIA." *Kidd v. Dep't of Just.*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Furthermore, "[a]gency affidavits—so long as they are 'relatively detailed and non-conclusory'—are 'accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Taylor Energy Co. LLC v. U.S Dep't of Interior Bureau of Ocean Energy Mgmt.*, 271 F. Supp. 3d 73, 86 (D.D.C. 2017) (quoting *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015)). "Only where 'a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials,' should summary judgment be denied." *Id.* (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)); *DiBacco*, 926 F.3d at 832 (citing *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

**A. The Department Reasonably Identified the Components and Records Systems to Search.**

The Department provided a detailed declaration describing its search for responsive documents, including its process for determining which Department components and records systems reasonably likely to maintain responsive records (Ex. A, Weetman Decl. ¶¶8-10), its use of the expertise of individuals with knowledge about the communications of the Department's principal officers (*id.* ¶11), as well as details about its process for searching records under the purview of the Under Secretary for Economic Growth, Energy, and the Environment (*id.* ¶¶12-13), Bureau of Energy Resources (*id.* ¶¶14-15), Bureau of Oceans and International Environment and Scientific Affairs (*id.* ¶¶16-17), Executive Secretariat Staff (*id.* ¶¶18-21), and the Special Presidential Envoy for Climate, led by John Kerry (*id.* ¶¶22-26).

**B. The Department Adequately Searched Records Related to Special Presidential Envoy for Climate John Kerry.**

TPPF objects to the adequacy of the search for records under the purview of the Special Presidential Envoy for Climate John Kerry. Dkt. 17 at 17-20. The Special Presidential Envoy for Climate, led by John Kerry, is a Cabinet-level position that serves on the National Security Council and leads the Administration's efforts to combat global climate change. Ex. A, Weetman Decl. ¶22. A Staff Assistant in the Special Presidential Envoy for Climate, who was knowledgeable of both the FOIA request and Special Envoy records, conducted a search of the Special Envoy electronic records and determined that all records responsive to Plaintiff's FOIA request would be located in the Special Presidential Envoy for Climate email records and it was determined that any responsive Special Presidential Envoy for Climate emails would have been captured by searches conducted of the Department's eRecords Archive. *Id.* ¶23.

The eRecords Archive is the Department's central repository for storing permanent electronic records transferred to the Bureau of Administration such as correspondence, diplomatic notes, cables, all emails sent and received on the State.gov network since January 1, 2017 , and retired records transferred to the Bureau of Administration in digital form, including the pre-2017 email records of certain former senior officials. *Id.* ¶24. A Department Technical Information Specialist, who was knowledgeable of both the FOIA request and the eRecords Archive, conducted a full-text search of eRecords on the Department's unclassified and classified systems using the following combination of search terms: ("Nationally Determined Contribution" or NDC or "National Climate Task") AND "2030 emmissions"~5. The date range used for this search was January 20, 2021, through July 8, 2022. *Id.* ¶25.

The Department did not conduct searches of Department employees' personal email accounts. *Id.* ¶26. Department personnel are discouraged from using personal email accounts to

conduct U.S. Government business.  *Id*.  When it is necessary to use a personal account, Department employees must either include their official U.S. Government email account on the to, cc, or bcc line or forward a complete version of the work-related email (including any attachments) to their official U.S Government email account no later than 20 calendar days after the original creation or transmission.  *Id*.  While one email was identified that contained a Department employee's personal email, it was found through a search of the Department's official systems, which indicated compliance with the Department's regulations. Moreover, the sender, Special Presidential Envoy John Kerry, included his official Department email address on the correspondence. The Department confirmed through the Special Presidential Envoy for Climate's office that the sender complied with the Department's regulations regarding the use of a personal email account for the conduct of official business.

## C. TPPF Cannot Rebut the Presumption of Compliance Conferred to Special Presidential Envoy for Climate John Kerry.

Relying on *Democracy Forward Foundation  v. United States Dep't of Com*., 474 F. Supp. 3d 69, 74 (D.D.C. 2020), TPPF argues that the Department should be required to search for responsive records in Special Envoy Kerry's Gmail account.  *See* Dkt. 17 at 21.  TPPF's reliance on *Democracy Forward Foundation* is unavailing.  In that case, the United States District Court for the District of Columbia described a rebuttable presumption to be applied by courts when considering search adequacy and nongovernmental email accounts.  It explained:

> "[A]gency records"—even those stored on a personal email account—are subject to FOIA. . . .  "[A]n agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door or because he is the head of the agency."
>
> Federal law prohibits federal officials from "creat[ing] or send[ing] a record using a non-official electronic messaging account" **unless they "cop[y] an official electronic messaging account of the officer or employee in the original creation or transmission of the record"** or "forward[ ] a complete copy of the record to an

7

official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). **Government officials are "presumed to have properly discharged the duty to forward official business communications from a personal email account to an official email account**." . . . But a plaintiff can **overcome this presumption with evidence that "rebut[s] agency affidavits with something more than pure speculation."**

*Id.* (citations omitted) (emphasis added). In other words, the presumption of compliance is only triggered if there is evidence that the officer did not comply with Section 2911(a). In *Democracy Forward Foundation*, the defendant agency failed to comply with Section 2911(a). *Id.* Thus, it was not entitled to the presumption and required to conduct additional searches involving nongovernmental emails. *Id.*

In stark contrast, here, there is no evidence that Special Presidential Envoy Kerry failed to properly discharge the duty to forward official business communications from a personal email account to an official email account. Here, the only example that TPPF presents in its Motion (Dkt. 17 at Ex. H) is an email message sent to both John Kerry's Gmail account *and* his official email account. This complies with Section 2911(a) and therefore fails to rebut the presumption. The mere fact that the Special Presidential Envoy for Climate used his Gmail account is not, alone, sufficient to rebut the presumption. Rather, there must be evidence that he failed to "copy an official electronic messaging account of the officer or employee in the original creation or transmission of the record." *Id.* There is no such evidence here. TPFF asks the Court to lift the presumption on mere speculation that other records *may* exist.[2] This is insufficient. *See Batton*,

---

[2] TPPF also points to a Boston Herald news article for the proposition that media reports corroborate the likelihood that John Kerry used his private email account for climate business. Dkt. 17 at 20. But again, the mere fact that the John Kerry used his Gmail account is not, alone, sufficient to rebut the presumption. Rather, there must be evidence that he failed to "copy an official electronic messaging account of the officer or employee in the original creation or transmission of the record." 44 U.S.C. § 2911(a). Neither TPPF's Exhibit H, nor its reliance on the Boston Herald article rebut the presumption.

598 F.3dat 176 (agency's FOIA search was adequate even though plaintiff asserted that other documents may exist that were not located) (citing *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992) ("The issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate.")).  Accordingly, the Department's search for records under the purview of the Special Presidential Envoy for Climate was adequate.

In conclusion, the Department's declaration provides more than sufficient detail to establish that the Department adequately searched the locations reasonably likely to contain documents responsive to TPPF's FOIA request.

## II.    The Department's Vaughn Index and Declaration Support the Claimed FOIA Exemptions.

Having established the adequacy of its search, the Department now addresses the propriety of its claimed FOIA exemptions, as supported by the Weetman declaration and the attached Vaughn index.   As stated above, an agency's declarations "are generally accorded the 'presumption of legitimacy' unless there is evidence that the agency handled the FOIA request in bad faith." *Batton*, 598 F.3d at 179.  And an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" *Wolf*, 473 F.3d at 374–75 (citations omitted). Here, the Department satisfies its summary judgment burden of establishing the propriety of its claimed FOIA Exemptions: Exemption 5 and Exemption 6.

### A.  The  Department Properly Claimed Exemption 5.

Exemption 5 excludes from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5); *Jobe v. Nat'l Transportation Safety Bd.*, 1 F.4th 396, 399 (5th Cir. 2021), cert. denied, 142 S. Ct. 757 (2022).  "Exemption 5 incorporates the various privileges which commonly shield government documents (most commonly, but not always, pre-decisional and/or deliberative

in character) from disclosure during litigation." *Id.* at 408. The deliberative process privilege

protects the confidentiality of candid views and advice of U.S. Government officials in their

internal deliberations related to policy formulation and administrative direction. *Id.* at 400.

Here, the Department withheld draft iterations on the development of greenhouse gas

emissions policies and early policy positions on the Nationally Determined Contribution. Ex. A,

Weetman Decl. ¶29. These iterations and early policy positions may not reflect the decisions

actually made or the policy position ultimately taken by the White House. *Id.* Often, these

iterations and drafts reflect policy proposals debated and abandoned as the Department worked

through the range of available policy options. *Id.* Their release could inject confusion, uncertainty,

and potentially undermine the United States actual policy position adopted on the Nationally

Determined Contribution and 2030 greenhouse gas emissions goals. *Id.*

In its Motion, TPPF does not challenge the Department's invocation of Exemption 5. *See

generally* Dkt. 17. The Department is entitled to summary judgment on this exemption.

**B. The Department Properly Claimed Exemption 6.**

The Department also claimed Exemption 6, which TPPF does challenge. Exemption 6

provides that an agency need not disclose "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). Pursuant to Exemption 6, "an agency may delete personal details within a document,

provided the details to be deleted are reasonably severable and the overall privacy interests of the

individual clearly outweigh the presumption of public disclosure." *Sherman v. U.S. Dep't of Army*,

244 F.3d 357, 361 (5th Cir. 2001). As the Court of Appeals for the Fifth Circuit has explained:

> The threshold inquiry in exemption 6 cases is whether the information requested
> includes "files" within the meaning of section 552(b)(6). The Supreme Court has
> interpreted exemption 6 "files" broadly to include any "information which applies
> to a particular individual." If the request includes such personal information,

10

> "courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." This determination, in turn, depends on a balancing of " 'the individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny.'"

*Id.* (citations omitted).  The Supreme Court has narrowly defined the "public interest" relevant to Exemption 6 balancing as "the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government."  *Id.* (citing *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495 (1994)).  Where the public interest in Exemption 6 balancing has been defined narrowly, the privacy interest protected by the exemption is broader and "encompasses [an] individual's control of information concerning his or her person."  *Id.*

### 1.  The Records Constitute "Similar Files" Under FOIA Exemption 6.

TPPF incorrectly argues that the names and agency email addresses of Department employees do not constitute "personnel and medical files and similar files" covered under Exemption 6.  Dkt. 17 at 10.  To the contrary, courts routinely find that agency records identifying employee names and email addresses are protected from disclosure.  *See Henderson v. U.S. Dep't of Just.*, 157 F. Supp. 3d 42, 50 (D.D.C. 2016) (citation omitted) ("The Court is satisfied that 'the names and related telephone and email identifying information' about government employees and stenograph court reporters qualify as 'similar files' insofar as this information can be identified as applying to particular individuals.").  Exemption 6 protects not only files "but also bits of personal information, such as names and addresses, the release of which would 'create a palpable threat to privacy.'"  *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 199 (D.D.C. 2016) (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015));  *see also Transparency Project v. United States Dep't of Just.,* No. 421CV00121SDJCAN, 2023 WL 2054380, at *35 (E.D. Tex. Feb. 10, 2023) (collecting cases); *Prechtel v. Fed. Commc'ns Comm'n*, 330 F. Supp.

3d 320, 329 (D.D.C. 2018) (finding that the definition for similar files "encompasses email addresses") (citing *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 178 (D.D.C. 2017)).   The records at issue—which contain the identifying information of Department employees—constitute "similar files" and thus satisfy the threshold requirement under Exemption 6.

### 2.   The Private Interest in Withholding the Information Outweighs the Public Interest in Disclosure.

Further, courts within this circuit and beyond routinely affirm the invocation of Exemption 6 to withhold federal employee names and email addresses, finding that the privacy interests outweigh the nominal public interest. *See Gosen v. U.S. Citizenship & Immigr. Servs.*, 75 F. Supp. 3d 279, 289 (D.D.C. 2014) (emphasis added) ("[I]dentifying information about USCIS or other government employees, such as their name, signature, and personal database code, and the significant privacy interest at stake when it comes to the identifying information of government employees in the context of FOIA requests is beyond dispute."); *see also Berk v. Exec. Off. of United States Att'ys,* No. 3:18-CV-1349-M-BK, 2021 WL 1877068, at *8 (N.D. Tex. Feb. 2, 2021), report and recommendation adopted, No. 3:18-CV-1349-M-BK, 2021 WL 1866548 (N.D. Tex. May 10, 2021), aff'd, No. 21-10693, 2022 WL 17337821 (5th Cir. Nov. 30, 2022) (agency properly withheld Bureau of Prisons staff names, initials, and titles under Exemption 6); *Transparency Project v. United States Dep't of Just.*, No. 420CV00467SDJCAN, 2022 WL 18776191, at *26 (E.D. Tex. Sept. 9, 2022) (agency properly withheld Department of Justice staff names and email addresses under Exemption 6); *McCann v. United States Citizenship & Immigr. Servs.*, No. CV 22-2502, 2023 WL 4706223, at *5 (E.D. La. July 24, 2023) (agency properly withheld United States Citizenship and Immigration Services staff names, email addresses, and phone numbers under Exemption 6); *Baldwin v. U.S. Dep't of Energy*, No. 18-cv-1872, 2020 WL

376563, at *4 (D.D.C. Jan. 23, 2020) (finding Exemption 6 applies to emails); *Shurtleff v. United States Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) ("Exemption 6 allows an agency to withhold personal identifying information, such as email addresses...."); *Hall & Assocs. v. United States Env't Prot. Agency*, No. CV 19-1095 (RC), 2020 WL 4673411, at *3 (D.D.C. Aug. 12, 2020) ("[T]he owners of the email addresses have a more than de minimis interest in the nondisclosure of their contact information and the email addresses themselves do not show 'what the government is up to.'").

Here, as in these cases, the Department correctly applied Exemption 6 to withhold the identities (names and email addresses) of Department officials who are career civil service employees and mid-level foreign service officers. Ex. A, Weetman Decl. ¶34. In some records, the identities of nondecision-making policy experts were withheld. *Id.* As to each Exemption 6 withholding, the Department considered the balancing test and concluded that (1) an individual had a privacy interest in the information withheld; and (2) disclosure of the information would not serve the "core purpose" of the FOIA, i.e., it would not disclose information about government activities. *Id.* ¶33; *see also* Ex. A1, Vaughn Index. Public association of a specific official with comments or edits made with the expectation of anonymity could expose the individual to unwanted and detrimental attention, particularly in the conduct of their official duties. *Id.* Accordingly, in responding to TPPF's FOIA request, the Department determined that the privacy interests clearly outweigh any public interest in disclosure of such personal information. *Id.*

The Department's withholdings here are supported by the Vaughn Index, the detailed Weetman Declaration, and the numerous courts to consider this application of Exemption 6. Accordingly, the Department is entitled to summary judgment on this exemption.

**CONCLUSION**

In summary, the Department respectfully requests that TPPF's Motion be denied, and

instead, that the Court grant judgment in favor of the Department because the Department (1)

adequately searched for responsive records and (2) properly applied redactions consistent with

statutory FOIA exemptions.


Dated: September 13, 2023                    Respectfully submitted,

                                             **Jaime Esparza**
                                             United States Attorney

                               By:     */s/ Liane Noble*
                                       **David B. Goode**
                                       Assistant United States Attorney
                                       State Bar No. 24106014
                                       **Liane Noble**
                                       Assistant United States Attorney
                                       State Bar No.24079059
                                       United States Attorney's Office
                                       903 San Jacinto Blvd., Suite 334
                                       Austin, Texas 78701
                                       (512) 916-5850 (phone)
                                       (512) 916-5854 (fax)
                                       david.goode@usdoj.gov
                                       liane.noble@uddoj.gov

                                       **Attorneys for Defendant**
                                       **U.S. Department of State**